**EDISON BUFORD**,

     Plaintiff,

v.

**MIAMI-DADE COUNTY**, *et al.*,

     Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants, Miami-Dade County; Detective Miguel Carballosa; and Detective Corey Thomas's Motion to Dismiss [ECF No. 33], filed November 10, 2017. Plaintiff, Edison Buford, filed a Response to Defendants' Motion to Dismiss [ECF No. 34] on November 24, 2017; and Defendants filed a Reply in Further Support of Motion to Dismiss [ECF No. 35] on December 1, 2017. The Court has carefully considered the First Amended Complaint [ECF No. 26], the parties' written submissions, and applicable law.

## I.     BACKGROUND[1]

On June 10, 2013, Plaintiff, Edison Buford, was driving a 2004 Nissan Maxima in Miami-Dade County when he observed an unmarked and unknown vehicle following him. (*See* Am. Compl. ¶ 22). The unmarked vehicle was occupied by Detectives Carballosa and Thomas. (*See id.* ¶¶ 29, 31). Plaintiff unsuccessfully attempted to lose the unmarked vehicle using

---

[1] The facts are taken from the Amended Complaint. As in any review of a motion to dismiss, the Court construes the Amended Complaint in the light most favorable to Plaintiff and takes the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

evasive driving maneuvers. (*See id.* ¶ 23). After failing to lose the unmarked vehicle, Plaintiff crashed into a pole. (*See id.* ¶ 25). At no point did the Detectives activate their vehicle's police lights or sirens. (*See id.* ¶ 24).

After crashing, Plaintiff exited his vehicle carrying an unloaded firearm and cellular phone and ran past the unmarked vehicle with both items in his hands. (*See id.* ¶¶ 26, 27). While running past the unmarked vehicle, Plaintiff tossed the firearm into a yard. (*See id.* ¶ 27). The Detectives exited their vehicle with their weapons drawn. (*See id.* ¶ 28). Plaintiff turned and noticed the vehicle occupants were police officers, he stopped running, and raised his hands in the air while still carrying his cellular phone. (*See id.* ¶¶ 29, 30). Nevertheless, "[w]ithout provocation," the Detectives began firing their weapons, hitting the cellular phone but missing Plaintiff. (*Id.* ¶¶ 31, 32 (alteration added)). Plaintiff turned away from the Detectives and began to run again but was shot in the back multiple times, causing him to fall. (*See id.* ¶ 33). Plaintiff remained on the ground, pretending to be dead, and was shot an additional six times in the back, legs, and in his testicles, causing him to lose a testicle. (*See id.* ¶ 34).

After the shooting, Plaintiff was arrested and charged with two counts of aggravated assault on a law enforcement officer and possession of a firearm by a convicted felon. (*See id.* ¶ 36). The Office of the State Attorney subsequently filed an information including these same charges and an additional charge for fleeing and eluding, but it later *nolle prossed* the aggravated assault on a law enforcement officer and fleeing and eluding counts. (*See id.* ¶¶ 37, 38). Plaintiff pled guilty to possession of a firearm by a convicted felon and was sentenced to three years in state prison. (*See id.* ¶ 39).

Plaintiff ultimately filed this lawsuit, asserting claims under 42 U.S.C. section 1983 against Miami-Dade County (Count I), Detective Miguel Carballosa (Count II), and Detective

Corey Thomas (Count III). Plaintiff seeks compensatory damages and attorney's fees. Defendants move to dismiss all claims with prejudice and request the Court deny Plaintiff an opportunity to file a second amended complaint. (*See generally* Mot.). The Court will first address Count I and then addresses Counts II and III together.

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility [exists] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (alteration added; citation omitted). This pleading standard does not require "detailed factual allegations," but a complaint must offer more than mere "labels and conclusions." *Id.* (citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (quotation marks omitted).

In considering a motion to dismiss under Rule 12(b)(6), "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). This deference is applied to factual allegations only, and not to mere legal conclusions. *See Iqbal*, 556 U.S. at 678. If after considering the complaint[2] and accepting as true its factual allegations the Court determines a plausible claim for relief has been stated, the complaint survives the motion to dismiss.

---

[2] The Court's consideration is limited to the allegations of the complaint and its exhibits. *See, e.g.*, *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993); *Brooks*, 116 F.3d at 1368–69; *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

## III.    DISCUSSION

### A.  Count I – *Monell* Claim Against Miami-Dade County Under 42 U.S.C. Section 1983

Count I alleges a section 1983 claim against the County.  In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court established specific parameters for finding municipalities liable under section 1983.  *See id.* at 694; *see also Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("The Supreme Court has placed strict limitations on municipal liability under [section] 1983." (alteration added)).  A county may be liable under [section] 1983 "only when the county's 'official policy' causes a constitutional violation."  *Grech*, 335 F.3d at 1329 (alteration added; citing *Monell*, 436 U.S. at 694).  Thus, a plaintiff must "identify a municipal policy or custom[3] that caused [his] injury."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (alteration in original; quotation marks and citations omitted; footnote call number added).

Plaintiff filed his First Amended Complaint on October 24, 2017, after Defendants had previously filed a Motion to Dismiss [ECF No. 22] the original Complaint on October 10, 2017. The First Amended Complaint adds approximately 50 pages to the original Complaint in an apparent effort by Plaintiff to buttress his *Monell* claim by, among other allegations, citing to 58 instances in which County law enforcement officers allegedly used excessive or deadly force, all in an attempt to show a policy or custom that caused Plaintiff's injury.  (*See* Am. Compl. 11–56). In response, the County devoted a substantial portion of its Motion to attacking these factual allegations by parsing through each instance and revealing inaccuracies. (*See* Mot. 12–20).

---

3 "'A custom is a practice that is so settled and permanent that it takes on the force of law.'"  *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)).  This requires a showing of a "'longstanding and widespread practice;'" a single incident of a violation is insufficient to demonstrate the existence of a policy or custom.  *Id.* (quoting *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)).

Plaintiff does not present any argument in response to the County's contentions relevant to the *Monell* claim. (*See generally* Resp.). Plaintiff's only reference to his *Monell* claim against the County in his Response consists of the following tacit admission of its inadequacy: "Defendant Miami-Dade County's motion to dismiss for failure to allege facts sufficient to establish a *Monell* claim should be granted *without* prejudice. Plaintiff reserves the right to seek leave of court to file a second amended complaint." (Resp. 9 (emphasis in original)).

To date, Plaintiff has not requested leave to file a second amended complaint, nor did he attach a proposed second amended complaint to his Response. The Court interprets Plaintiff's statements with regard to the *Monell* claim as conceding he has not properly stated a claim against the County upon which relief can be granted. In addition, the undersigned agrees Plaintiff has failed to allege facts sufficient to state a claim under section 1983 against Miami-Dade County for the reasons stated in Defendants' Motion. (*See* Mot. 12–20). Dismissal of Count I against the County is therefore appropriate.

## B. Counts II and III – 42 U.S.C. Section 1983 Excessive Force Claims Against Detectives Carballosa and Thomas

Counts II and III allege the Detectives used excessive force under color of law to deprive Plaintiff of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Florida Constitution.[4] (*See* Am. Compl. ¶¶ 66, 78). The Detectives assert they are entitled to qualified immunity as a defense to these claims. (*See* Mot. 3). For the reasons set forth below, the Court denies the Detectives' request to dismiss Counts II and III of the First Amended Complaint.

---

[4] Although the First Amended Complaint alleges the Detectives violated Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, as well as under Florida law (*see* Am. Compl. ¶ 1), the parties' briefing focuses exclusively on whether the Detectives violated the Fourth Amendment to the United States Constitution by utilizing excessive and deadly force. Because the parties focus only on that alleged violation, the Court similarly limits its analysis to the Fourth Amendment issues.

An official asserting the affirmative defense of qualified immunity must first show he was acting within his discretionary authority.[5]  *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Next, courts apply the two-part test set forth by the Supreme Court in *Saucier v. Katz*, as later modified in *Pearson v. Callahan,* to determine whether qualified immunity applies.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The first prong of the test requires that courts "determine whether the facts '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right[.]'"  *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005) (alterations in original; quoting *Saucier*, 533 U.S. at 201).  "If the conduct did not violate a constitutional right, the inquiry ends there."  *Id.*  If a constitutional right was violated, the court moves to the next step and determines "whether the right was clearly established."[6]  *Saucier*, 533 U.S. at 201.  Plaintiff "bear[s] the burden of showing that the federal rights allegedly violated were clearly established."  *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (alteration added; citation omitted).

To satisfy the "clearly established" requirement, a law may not be "defined 'at a high level of generality;'" rather, the "clearly established law must be 'particularized' to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).  Although the Supreme Court "do[es] not require a case directly on point, . . . existing precedent must have placed the

---

[5] Plaintiff agrees the Detectives were acting within the scope of their discretionary authority. (*See* Am. Compl. ¶ 19; Resp. 3).

[6] Judges need not address these prongs in any particular order.  *See Pearson*, 555 U.S. at 236 (Judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2007) (citations omitted; alterations added).

"That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (emphasis in original; footnote call number omitted), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). Furthermore, "to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (citations omitted). Courts consequently apply a standard of "objective reasonableness" to determine whether the official's use of force was excessive under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396; *see also McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) ("In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." (citing *Scott v. Harris*, 550 U.S. 372 (2007))).

What constitutes "reasonable" behavior is not easily defined. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . we must slosh our way through the factbound morass of 'reasonableness.'"

*Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (citations, alterations, and internal quotation marks omitted). Nevertheless, in *Vaughan v. Cox*, the Eleventh Circuit recited some of the conditions attendant to a lawful use of deadly force. *See* 343 F.3d 1323, 1329–30 (11th Cir. 2003) (discussing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)) (quotation marks omitted). The court explained:

> [A] police officer may use deadly force to seize a fleeing felony suspect when the officer: (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

*Id*. (alteration added; emphasis in original; internal quotation marks and citations omitted).

The Detectives point to case law finding, where a plaintiff's allegations of excessive force include actions that a reasonable officer could have believed to be lawful, it is appropriate to grant a motion to dismiss based on the qualified immunity defense. (*See* Mot. 3 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." (citation omitted)))). The Detectives assert dismissal is proper because the allegations in the First Amended Complaint clearly indicate their use of force was reasonable under the circumstances. *See Graham*, 490 U.S. at 397 (explaining "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (citations omitted)).

If the Detectives' actions were reasonable, as the Detectives argue, no constitutional right was violated and qualified immunity bars the claims. *See Robinson*, 415 F.3d at 1255 ("If the conduct did not violate a constitutional right, the [qualified immunity] inquiry ends there."

(alteration added)). The Detectives further argue even if a constitutional right was violated, "it is evident that there was no clearly established law dictating that a shooting under the circumstances described by Plaintiff violated Plaintiff's clear constitutional rights." (Mot. 12). The Detectives assert this case is ripe for dismissal and discovery is unnecessary, as "the type of case-dispositive fa[c]ts that might not typically be brought to light until the discovery phase were actually admitted by Plaintiff in his pleading." (Reply at 2 (alteration added)).

Plaintiff insists the Detectives are not entitled to qualified immunity because (1) the Detectives violated his constitutional rights under the Fourth Amendment by using excessive force under color of law (*see* Resp. 3–5; Am. Compl. ¶¶ 66, 78); and (2) the use of excessive force, when no reasonable belief existed that the Detectives or the public was in imminent danger, violates a clearly established constitutional right (*see* Resp. 7; Am. Compl. ¶¶ 71, 83); *see also Saucier*, 533 U.S. at 201. The Court agrees with Plaintiff: the Amended Complaint's facts do not show the Detectives' use of deadly force was objectively reasonable.

Defendants' arguments regarding "case-dispositive" facts rely too heavily on the Detectives' re-interpretation of those facts. For example, Plaintiff states he was followed by, and attempted to lose, an unknown and unmarked vehicle that was traveling without sirens or police lights. (*See* Am. Compl. ¶¶ 22–24). Detectives, in contrast, assert "Plaintiff led the Detectives on a chase." (Mot. 2). Contrary to the Detectives' characterization, the alleged facts – accepted as true – indicate Plaintiff attempted to evade an unmarked vehicle because he was being followed by an unknown person, not to escape law enforcement. This renders distinguishable the cases the Detectives rely on involving police chases. *See, e.g., Jean-Baptiste v. Gutierrez*, 627 F.3d 816 (11th Cir. 2010) (finding that an officer's use of deadly force against an individual who led the officer, driving a marked vehicle, on a dangerous chase culminating in a crash was

reasonable and not in violation of the Fourth Amendment); *Murphy v. Demings*, 626 F. App'x 836, 837–38 (11th Cir. 2015) ("Viewed in the light most favorable to Plaintiff, these facts are pertinent. . . . [S]urveillance footage shows that at least one of the unmarked police cars had its blue lights on at the time." (alterations added; footnote call number omitted)).

The Detectives also firmly assert their use of deadly force was justified because Plaintiff admits he ran toward their unmarked vehicle while holding a firearm after the crash. (*See* Mot. 7–8). Conveniently, this characterization of the pleading's factual allegations omits a significant portion of the factual description Plaintiff supplies. Plaintiff alleges he ran toward — and then past — the unmarked vehicle, he tossed a firearm on the ground at some point as he ran past the unmarked vehicle, and, after he was past the unmarked vehicle and without provocation from the Detectives, Plaintiff turned to see, for the first time, that his pursuers were in fact law enforcement officers. (*See* Am. Compl. ¶¶ 26–31). At that point, prior to the Detectives' firing of their weapons, Plaintiff stopped and placed his hands in the air, displaying only a cell phone. (*See id.* ¶¶ 29–30). In addition, the Detectives shot Plaintiff at least six times and in the back after Plaintiff was visibly incapacitated, on the ground, "pretending to be dead." (*Id.* ¶ 34). The Detectives' selective reading of the Amended Complaint cannot be the ground upon which qualified immunity is granted at this stage.

After careful consideration, the Court concludes the facts, as alleged by Plaintiff, do not establish qualified immunity applies to bar this suit against the Detectives. On the contrary, taking the allegations of the Amended Complaint as true, Plaintiff has shown: (1) he did not knowingly lead Detectives on a dangerous chase (*see* Am. Compl. ¶¶ 22–25); (2) he was unarmed at the time the Detectives began firing (*see id.* ¶¶ 27, 30); (3) his arms were up showing only a cell phone and he posed no threat (*see id.* ¶ 29); (4) he was no longer fleeing when the

shooting commenced (*see id.*); and (5) at least six of the shots fired into Plaintiff's body were fired after he was on the ground and unarmed (*see id.* ¶ 34). The Eleventh Circuit has previously held the law is clearly established "that the use of deadly force against an unarmed, non-threatening, and non-fleeing individual is unconstitutional." *Adams v. Sheriff of Palm Beach Cty.*, 658 F. App'x 557, 564 (2016) (collecting cases); *see also S.S. v. City of Montgomery*, No. 2:11-cv-254-WC, 2012 WL 3763670, at *2 (M.D. Ala. Aug. 29, 2012) (denying summary judgment for officer who hit plaintiff in the head with his gun after plaintiff had dropped his keys, placed his hands in the air, and kneeled in compliance with officers' orders because "a gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force") (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010)), *affirmed in relevant part and reversed in part by S.S. ex rel. Montgomery v. Bolton*, 522 F. App'x 452, 454 (11th Cir. 2013); *Harper v. Perkins*, 459 F. App'x 822, 826–27 (11th Cir. 2012) (denying qualified immunity for officers who shot a taser gun at plaintiff that caused him to fall from a tree and become a paraplegic when plaintiff was non-threatening, non-fleeing, and had complied with officers' instructions to raise hands in the air).

While pressing forward with the present Motion, the Detectives acknowledge, "qualified immunity is often more appropriate for summary judgment."[7] (Reply at 1). Discovery may or may not disprove the facts as alleged in the Amended Complaint; yet, the Court is bound by those facts at this stage. *See Harper*, 459 F. App'x at 826 (finding officers were not entitled to qualified immunity at the motion to dismiss stage and explaining that courts are "required to

---

[7] In fact, many excessive force cases in the Eleventh Circuit, including many relied on by the Detectives, have resolved the application of qualified immunity at summary judgment rather than on a motion to dismiss. *See, e.g.*, *Demings*, 626 F. App'x 836; *Jean-Baptiste*, 627 F.3d 816; *Bodden v. Bodden*, 510 F. App'x 851 (11th Cir. 2013); *Jackson v. Sauls*, 206 F.3d 1156, 1159 (11th Cir. 2000); *Beshers v. Harrison*, 495 F.3d 1260 (11th Cir. 2007); *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002); *Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009).

view the complaint in the light most favorable to the plaintiff, and to accept all of the plaintiff's well-pleaded facts as true."); *Harrigan v. Metro Dade Police Dep't Station No. 4*, 636 F. App'x 470, 476 (11th Cir. 2015) (affirming denial of qualified immunity at motion to dismiss stage pending further development of record because "Plaintiff has pled a viable basis for overcoming qualified immunity and holding Defendant individually liable under § 1983 for using excessive force"); *Jenkins v. Davis*, Case No. 3:11-CV-307, 2011 WL 4550168 at *3 n.5 (M.D. Ala. Sept. 2, 2011) ("At the motion to dismiss stage, the court must rely on the pleadings and the court cannot . . . say that the plaintiff can establish no facts that would allow him to prevail. The defendant may, however, . . . challenge the sufficiency of the plaintiff's claims at a later date in a motion for summary judgment . . . ." (alterations added)); *Prescott v. Oakley,* 8:16-CV-60, 2017 WL 1045065 at *3 (M.D. Fla. March 17, 2017) ("Because [plaintiff] alleges a violation of a clearly established constitutional right, [the officers] are not entitled to qualified immunity at this stage." (alterations added; footnote call number omitted)).

In reviewing the facts in the First Amended Complaint in the light most favorable to the Plaintiff, the Court concludes the claims against the Detectives are plausible and qualified immunity is not warranted at this stage.

## IV.    CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 33]** is **GRANTED in part** and **DENIED in part**.  Count I of the First Amended Complaint is dismissed.  Plaintiff may proceed as to Counts II and III of his Amended Complaint.

**DONE AND ORDERED** in Miami, Florida this 9th day of January, 2018.


_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record